For the foregoing reasons judgement is entered in favor of defendant.

UNITED MINE WORKERS OF AMERICA, DISTRICT NO. 5, PLAINTIFF *v.* U.S. DEPARTMENT OF LABOR, DEFENDANT

Court No. 87–07–00774

(Decided June 19, 1989)

*Ada Guyton* for plaintiff.
*Stuart E. Schiffer,* Acting Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Velta A. Melnbrencis*) for defendant.

## OPINION

CARMAN, *Judge:* Plaintiff, United Mine Workers of America, District Number 5 (UMWA) moves this Court for judgment upon the agency record, contending that the defendant United States Department of Labor (Labor or the Department) improperly denied workers at the Newfield Mine and the Russellton Preparation Plant eli-

---

[8]The court notes that there are limited circumstances in which the court may look beyond the administrative record, *e.g.*, when there has been a strong showing of bad faith or improper behavior on the part of the agency. *See Public Power Council* v. *Johnson,* 674 F. 2d 791, 795 (9th Cir. 1982) (citing *Citizens to Preserve Overton Park, Inc.* v. *Volpe,* 401 U.S. 402 (1971)); *Armco, Inc.,* v. *United States,* 13 CIT 387, Slip Op. 89–63 (May 12, 1989). Plaintiffs, however, have failed to make such a showing. ITA's alleged failure to provide adequate notice of its deadline for the submission of information relating to Ipsco's unliquidated 1986 and 1987 entries is not adequate evidence that ITA, at the time it made its scope determination, had no intention of applying the determination fairly. Moreover, any prejudice which plaintiffs may have suffered as a result of this alleged inadequate notice could have been challenged in the administrative review proceeding.

[9]Plaintiffs claim that because they are not participating in the administrative review of the OCTG orders, they have "no other forum but this Court to expose the Department's end use certification procedure as a sham which has not yet excluded a single entry of IPSCO line, standard or other non-OCTG pipe." Plaintiffs' Reply Brief at 7. That plaintiffs have chosen not to participate in the administrative review does not alter the fact that information relating to ITA's subsequent implementation of the end-use certification procedure is not a part of the administrative record in this case challenging the scope determination.

gibility for trade adjustment assistance under Title II of the Trade Act of 1974 as amended. 19 U.S.C. §§ 2271–98 (1982 & Supp. V 1987).[1]

UMWA argues that the Department's denial of certification of eligibility for trade adjustment assistance is not supported by substantial evidence on the record. Plaintiff claims that the Department's determination is not in accordance with law because Labor utilized an improper base year in determining whether workers were eligibile for assistance. UMWA requests that this Court reverse Labor's denial of certification and issue an order certifying the workers for adjustment assistance. In the alternative, UMWA requests a remand to the Department of Labor for further consideration. The Department of Labor seeks the affirmance of its determination and dismissal of this action.

On the basis of the papers submitted herein, the arguments of the parties, the relevant case law and an examination of the administrative record, the Court finds that Labor's determination is based on substantial evidence on the record and is in accordance with law. The determination by Labor is affirmed and the action is dismissed.

### BACKGROUND

In early February of 1987 UMWA filed petitions for certification of eligibility for trade adjustment assistance benefits on behalf of workers of LTV Steel Corporation's (LTV) Russellton Preparation Plant in Russellton, Pennsylvania and its Newfield Mine located in Verona, Pennsylvania. Administrative Record Documents 2, 4 (hereinafter R.). The workers at the Newfield Mine were engaged in mining low sulphur metallurgical coal which was subsequently shipped to the Russellton Preparation Plant where it was cleaned and prepared for sale. *Id.* Both LTV facilities were closed in December 1986, resulting in twenty layoffs at the Russellton Plant and one hundred layoffs at Newfield Mine. R. 30.

In the petitions for trade adjustment assistance certification, UMWA briefly listed its reasons for believing that increased imports of articles competitive with the mining and preparation of low sulphur coal resulted in the loss of employment by the workers. The petition for the Newfield Mine stated that "the coal mined was sold to [a broker] who in turn supplied steel producers with this high quality, low sulphur coal but because of the disastrous decline in domestice [sic] steel production because of foreign steel imports there is no longer a market for this coal." R. 4. The petition for the Russellton Preparation Plant stated that "coal cleaned at this plant was sold to a broker, * * * who supplied steel producers with this high quality coal but because of the radical drop in domestic steel

---

[1]The Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100–418, §§ 1421–30, 102 Stat. 1107, 1242–44 (1988) renumbered 19 U.S.C. § 2272 as § 2272(a) and added § 2272(b) relating to the eligibility of oil and gas workers to apply for adjustment assistance benefits. These changes do not effect this determination.

production because of foreign steel imports there is no longer a market for this coal." R. 2.

Labor initiated the investigation by sending an extensive questionnaire to the LTV officials. Based on the responses, Labor determined that coal shipments from the Newfield Mine increased during the period covering 1985 to 1986. It was also determined that the coal was not used in LTV's steel production plants but was sold to a commodities broker. Confidential Record Documents 13, 30 (hereinafter Conf. R.). Statistics compiled by the Department of Labor indicated that from 1981 through September 1986 imports of bituminous steam coal, lignite and anthracite coal constituted a very minimal percentage of United States production and apparent consumption. R. 27, 28. The Department further determined that imports of metallurgical coal were negligible. R. 29.

Based on the results of its investigation, Labor issued a negative determination of eligibility for adjustment assistance for both the Newfield Mine and the Russellton Preparation Plant. Labor determined that the investigation had failed to establish that the criterion of section 19 U.S.C. § 2272(3) had been met. R. 37–8; *Notice of Negative Determination of Eligibility to Apply for Worker Adjustment Assistance,* 52 Fed. Reg. 12,623 (April 17, 1987). The Secretary's determination stated:

> Petitioners allege that imports of steel reduced domestic demand for coal and led to separations at the Russelton Prep [sic] Plant and the Newfield Mine. Imported steel cannot be considered as like or directly competitive with domestically-extracted coal. Since coal from the two facilities was not shipped to affiliated steel production facilities, imports of coal must be considered in determining if workers at Russelton [sic] and Newfield have been adversely affected by imports.
>
> United States imports of coal are negligible. The ratio of imports to domestic production is less than one percent.

R. 38.

By letter dated April 29, 1987, UMWA requested administrative reconsideration of Labor's denial of certification for eligibility for trade adjustment assistance. R. 44. In support of reconsideration, the letter recited the following facts UMWA alleged the Department failed to take into account:

1. In 1982 the Russellton Preparation Plant was owned by Republic Steel.
2. Republic was purchased by LTV Steel in 1982.
3. The Russellton Preparation Plant was subsequently shut down in October of 1982. Prior to this time the preparation plant was cleaning the coal of the Newfield mine, also owned by LTV and earlier Republic Steel. This coal was being used by Republic and then LTV in the steel making process.

4. Russellton reopened in February of 1984. From that time forward LTV sold the coal from its Newfield mine which was cleaned at the Russellton Preparation Plant on the open market.

5. Raymond A. Hay, LTV's chairman and chief executive officer, released the following statement regarding LTV Steel's reason for claiming bankruptcy:

> This weakness in the steel and energy sectors is due, in large part, to an unprecedented and sustained level of imports over the past several years which continues virtually unabated. It is estimated that direct and indirect imports account for about 51% of the total steel consumption in the United States.
>
> *       *       *       *       *       *       *

*Id.*

On May 13, 1987, Labor denied UMWA's request for reconsideration on the basis that no new facts or information had been raised by the reconsideration letter. According to Labor, the letter did not "present evidence that the Department erred or new facts of a substantive nature bearing on the determination." R. 50. The letter of denial of UMWA's request for reconsideration further explained the rationale underlying the decision.

> The workers of the Russelton Prep [sic] Plant and the Newfield Mine extract and clean metallurgical coal. The petitioners claim that imports of steel reduced the demand for coal and led to separations at the two facilities. Imported steel is not like or directly competitive with domestically extracted coal. Since February 1984, when the facilities were reopened, the extracted and cleaned coal was sold on the open market and not to an affiliated steel production facility. Therefore, only imports of coal can be considered in determining if workers at Russelton [sic] and Newfield were adversely affected by imports. Aggregate importers of coal are negligible. The ratio of coal imports to domestic production is less than one percent.

*Id.* Thereafter the plaintiffs filed this action.

### DISCUSSION

Section 284 of the Trade Act of 1974 empowers the Court of International Trade to review a negative determination by the Secretary of Labor denying certification of eligibility for adjustment assistance. The statute provides in part as follows:

> [t]he findings of fact by the Secretary of Labor * * *, if supported by substantial evidence, shall be conclusive; but the court, for good cause shown, may remand the case to [the] Secretary to take further evidence and [the] Secretary may thereupon make new or modified findings of fact * * *. Such new or modified findings of fact shall likewise be conclusive if supported by substantial evidence.

19 U.S.C. § 2395(b) (1982). Substantial evidence has been held to be more than a "mere scintilla," but sufficient evidence to reasonably support a conclusion. *Ceramica Regiomontana, S.A.* v. *United States,* 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986) (and cases cited therein), *aff'd,* 810 F.2d 1137 (Fed. Cir. 1987). Additionally, the rulings made on the basis of the factual findings must "be in accordance with the statute and not be arbitrary or capricious, and for this purpose the law requires a showing of reasoned analysis." *International Union* v. *Marshall,* 584 F.2d 390, 396 n.26 (D.C. Cir. 1978); *Woodrum* v. *Donovan,* 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), *aff'd, sub nom. Woodrum* v. *United States,* 2 Fed. Cir. (T) 82, 737 F.2d 1575 (1984).

In order to certify a group of workers as eligible for trade adjustment assistance benefits as provided for under section 222 of the Trade Act of 1974, the Secretary of Labor (Secretary) must determine:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

For purposes of paragraph (3), the term "contributed importantly" means a cause which is important, but not necessarily more important than any other cause.

19 U.S.C. § 2272. Labor concluded that criterion (3) above had not been satisfied. The Department found that no increases in imports of articles like or directly competitive with articles produced by workers of the Russellton Preparation Plant and the Newfield Mine contributed importantly to the separations of the workers.

### Steel Imports

UMWA argues that LTV Steel was forced to file for bankruptcy as a result of increased imports of steel and that since the Newfield Mine and the Russellton Preparation Plant were owned and operated by LTV Steel, "[a]ny factors which seriously affected LTV Steel finances affected its ability to operate these plants. Thus, imported steel caused the closure of the facilities." Petitioner's Brief at 5–6.

While this Court sympathizes with the plaintiff's plight, the Department properly applied the statute in conformity with judicial precedent. For the purposes of the trade adjustment assistance law a finished product is not like or directly competitive with one of its

components. Labor is therefore not required to examine import data concerning the finished product to determine whether increased imports of the finished product contributed importantly to worker job loss, when the workers only produced a component used in the production of the finished product.

This Court stated the proposition succinctly in *International Union, United Automobile, Aerospace and Agricultural Implement Workers* v. *Donovan:*

> [T]he test is clear: the imported article, which allegedly injured the domestic market, "must be found to be 'interchangeable with or substitutable for' the article under investigation * * *." Based on this test, a component, which is adversely impacted by increased imports of a finished article incorporating that component, cannot be like or directly competitive with the finished product.

8 CIT 13, 20, 592 F. Supp. 673, 678 (1984) (citations omitted); *see also, United Shoe Workers* v. *Bedell,* 506 F.2d 174 (D.C. Cir. 1974).

Following this line of cases, this Court in *United Mine Workers of America* v. *Brock,* 11 CIT 414, 664 F. Supp. 543, 545–46 (1987) determined that coal used in the production of steel was analogous to a component of steel and concluded that coal and steel are not "like" products for purposes of trade adjustment assistance. Where an article such as coal is used in the production of a finished product, i.e. steel, the finished product is not like or directly competitive with the article used in its production under 19 U.S.C. § 2272. This Court holds that Labor properly declined to examine the impact of steel imports on the termination of production at the Newfield and Russellton coal facilities.

Labor also properly determined that the article produced by the petitioning workers was coal not steel. Labor's investigation determined that coal was the article produced by the petitioning workers. The workers at the Newfield Mine extracted coal from the mine. The workers at the Russellton Plant further processed or cleaned the coal that was extracted from the Newfield Mine. None of this coal was used by the parent company, LTV Steel, in making steel; all of it was sold to a commodity broker who sold the coal on the open market. R. 2, 4, 44 and Conf. R. 13, 30.

Since coal was the article produced by the petitioning workers, Labor examined coal imports to determine whether increased imports contributed importantly to the plant closings. To the contrary, Labor determined that coal imports during the period of review were negligible and ascertained that the ratio of imports to domestic production was less than one percent. R. 27–28. On that basis Labor determined that increased imports did not contribute importantly to the plant closings in issue. This Court holds that Labor's determination was based upon substantial evidence in the record.

## BASE YEAR

The UMWA also argues that Labor improperly used 1985 as the base year to determine whether the petitioners were eligible for adjustment assistance. Plaintiff contends that Labor should have used any year prior to 1984 as the base year for comparison of import data. Plaintiff claims that prior to 1982 coal extracted from the Newfield Mine and processed at the Russellton Preparation Plant was used by its parent company (either LTV Steel or Republic Steel) in its steel making capacity. In October of 1982 the Russellton Preparation Plant was shut down. The plant was reopened in February of 1984 but the coal was sold exclusively on the open market. UMWA claims that LTV sold the coal on the open market in order to compensate for markets lost to imported steel. Thus, UMWA claims that even though the workers were separated from employment in 1986, the pivotal events relating to that dislocation occurred prior to 1984.[2]

The petitions for adjustment assistance in this case were filed in February of 1987 and the worker separations occurred in December, 1986. Labor based its determination on import data from 1985 up to and including 1986, because according to Labor, an investigation of those years permitted Labor to focus upon those imports which were most likely to affect employment in the year of separation. The practice of labor limiting its investigation to the year of worker separations and the immediately preceding year has been approved by the courts on numerous occasions. *See Paden* v. *United States Department of Labor,* 562 F.2d 470, 472–74 (7th Cir. 1977); *United Glass and Ceramic Workers* v. *Marshall,* 584 F.2d 398, 406–07 (D.C. Cir. 1978); *International Union* v. *Donovan,* 8 CIT at 17–18, 592 F. Supp. at 676–77. Plaintiff's contention that the Department should have examined data from prior to 1984 asks the Secretary to impermissibly go beyond the requirements of the statutory scheme. This Court holds Labor's decision to utilize data pertaining to imports in the years 1986 and 1985 is based upon substantial evidence in the record and is accordance with law.

## CONCLUSION

On the basis of the foregoing, this Court holds that the determination of the Department of Labor denying plaintiff's petitions for eligibility for trade adjustment assistance is based upon substantial evidence in the record, is in accordance with the statute, not arbitrary and capricious and shows reasoned analysis. Plaintiff's motion for judgment on the agency record is denied and the determination by the Department of Labor is affirmed. This action is dismissed.

---

[2]This Court notes that while the October, 1982 worker separations may have been the proper subject of trade adjustment assistance petitions filed at or around that time, they are not properly the subject of petitions filed in February of 1987 since 19 U.S.C. § 2273(b)(1) mandates that eligibility for certification shall not apply to "worker[s] whose last total or partial separation from the firm * * * occurred * * * more than one year before the date of the petition on which such certification was granted * * *." *See United Mine Workers of America* v. *Brock,* 11 CIT at 415, 664 F. Supp. at 544 (and citations therein).