FORMER EMPLOYEES OF BOISE CASCADE CORP., PLAINTIFFS *v.*
U.S. SECRETARY OF LABOR, DEFENDANT

Court No. 90–08–00443

(Decided March 20, 1991)

*Walter Fahlenkamp, pro se,* for plaintiffs.
*Stuart M. Gerson,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (*Vanessa P. Sciarra*), *Scott Glabman,* United States Department of Labor, of counsel, for defendant.

### OPINION

RESTANI, *Judge*: Walter Fahlenkamp, on behalf of the former employees of Boise Cascade Corporation, filed this action appealing a final determination by the Secretary of Labor denying certification for trade adjustment assistance benefits under 19 U.S.C. § 2272 (1988). Plaintiffs

move for judgment on the agency record pursuant to Rule 56.1 of the Rules of this court. For the following reasons the court finds the agency determination to be supported by substantial evidence contained in the administrative record and therefore, plaintiffs' motion is denied.

BACKGROUND

On May 4, 1990, Michael H. Pieti petitioned the Department of Labor ("Labor") on behalf of former employees of Boise Cascade Corporation ("Boise Cascade") for certification of eligibility for trade adjustment assistance benefits. The petition covered former workers of the Goldendale and Yakima, Washington, sawmill facilities of Boise Cascade. Until it was closed in December of 1989, the Goldendale plant produced softwood lumber. The Yakima facility produced both softwood lumber and softwood plywood. Petitioners argued that they were eligible for trade adjustment assistance because their unemployment was caused by increased imports of softwood lumber products.[1] As support for their contention, petitioners referenced Labor to materials from a previous investigation of the same two facilities, TA-W-23,687 (Goldendale) and TA-W-23,688 (Yakima).[2]

On May 14, 1990, Labor initiated an investigation with regard to workers at these plants. During this investigation, Labor obtained information confirming that sales and production of softwood lumber produced by the two facilities increased in 1989 as compared to 1988, but declined in the January to April period of 1990 as compared to the same period in 1989. Record at 46, 49–50. Boise Cascade provided Labor with a list of several major customers who purchased lumber from the company during the relevant time period. These customers represented over 26 percent of the corporate-wide sales decline of softwood lumber in the first four months of 1990. Record at 47. In responding to a telephone survey, none of the customers reported increasing their purchases of imported softwood lumber while decreasing their purchases from Boise Cascade. *See* Record at 60–65.

Based on this information, Labor denied plaintiffs' petition for certification of eligibility on July 26, 1990. Record at 68–69. Labor stated that the third criterion of 19 U.S.C. § 2272(a) was not met. Specifically, United States imports of softwood lumber *decreased* absolutely in 1989 as compared to 1988 and the customer survey revealed that several major customers, accounting for a large percentage of Boise Cascade's sales decline, had not increased their purchases of imported lumber during

---

[1] Petitioners expressly stated that they were "petitioning only soft wood lumber impacted workers," Administrative Record ("Record") at 12, and therefore, the workers of the Yakima plant who engaged in the manufacture of plywood were not covered by the petition.

[2] This earlier investigation, commenced by a petition dated March 5, 1990, ended on February 2, 1990 when Labor denied trade adjustment assistance. The denial was based on declining United States imports of softwood lumber and softwood plywood. Notice of this denial was published in the *Federal Register* on March 8, 1990. *See* Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance, 55 Fed. Reg. 8,615.

the relevant time period. *Id.* at 69. Notice of this negative final determination was published in the *Federal Register* on August 9, 1990. *See* Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance, 55 Fed. Reg. 32,503.

After an exchange of letters between Betty Fahlenkamp (wife of one of the petitioners, Walter Fahlenkamp) and Labor,[3] petitioners sent a letter to the Clerk of this court which was deemed a summons and complaint filed on August 30, 1990. Labor responded with an answer filed November 26, 1990. The Clerk of this court accepted plaintiffs' letter of December 24, 1990 as a motion for judgment on the agency record filed on January 8, 1991.

### DISCUSSION

This court has jurisdiction to review any final determination of the Secretary of Labor under § 223 of the Trade Act of 1974, 19 U.S.C. § 2273. *See* 28 U.S.C. § 1581(d)(1)(1988). The court will review the final agency determination to decide whether it is supported by substantial evidence contained in the administrative record, and is in accordance with law. 19 U.S.C. § 2395(b)(1988). Substantial evidence is defined as more than a "mere scintilla," but sufficient evidence to reasonably support a conclusion. *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), *aff'd*, 810 F.2d 1137 (1987).

As noted earlier, a group of workers whose unemployment is caused by imports may be eligible to apply for adjustment assistance if the Secretary of Labor determines, after investigation, that the three criteria under 19 U.S.C. § 2272 are met. The statute provides that:

> (a) The Secretary shall certify a group of workers * * * as eligible to apply for adjustment assistance under this part if he determines-
> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
> (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272 (1988). Worker adjustment assistance will be granted provided the petitioners meet each of the three requirements.

In this case, Labor determined that petitioners did not meet the third criterion. Several findings support this decision. First, evidence contained in the record indicates that United States imports of softwood

---

[3] Mrs. Fahlenkamp wrote two letters to Labor requesting answers to various questions concerning the negative determination and the procedures to appeal the determination. *See* Record at 70–71, 73–74. Labor responded with two letters detailing the appeal process and the reasons for the negative finding. *See* Record at 72, 75.

lumber decreased absolutely in 1989 as compared to 1988. Record at 45. Thus, the record supports the conclusion that the statutory requirement that imports be "increasing," was not met. Second, the telephonic customer survey[4] clearly indicates that the major customers did not cut back on their softwood lumber purchases from Boise Cascade while increasing their purchases of imports. Accordingly, substantial evidence exists supporting Labor's conclusion that the imports did not contribute importantly[5] to petitioners' separations.

A case for worker adjustment assistance based on increased imports was not made because the record before Labor did not reveal both increased imports of the subject product and a causal connection between the imports and the separations. If the record evidence is not sufficient to support an affirmative finding on both factors, then Labor must deny the certification petition, as it did here. In their letter-Rule 56.1 motion, plaintiffs do not directly challenge either of Labor's findings. Rather, they argue that the lay offs at the Yakima plant and the closure of the Goldendale facility should be considered separately, that Labor did not adequately investigate the amount of softwood lumber imports, and that extra record information indicates that Boise Cascade was unable to place competitive timber bids.

As to the first argument, Labor properly concluded that the two facilities were sufficiently related and that they could be investigated together, without prejudice to any of the workers. *See* Record at 47. The record indicates that the marketing of softwood lumber by both of the sawmills was tied together and that the separations at both could be consolidated in the investigation. *See* Record at 49–50. Plaintiffs have not provided the court with any information which would cast doubt upon Labor's[6] decision to consider the two sawmills together.

Plaintiffs' assertion that Labor did not adequately investigate the amounts of softwood lumber imports is likewise unpersuasive. Labor *did* examine the level of imports and concluded that they were decreasing. The evidence used by Labor to support its determination clearly shows that imports decreased from 1988 to 1989 (13.8 billion board feet in 1988 to 13.6 billion board feet in 1989). *See* Record at 45. Viewed in terms of imports relative to domestic production, the figures for 1988

---

[4] This court has recognized, in cases other than those involving deceptive labelling, that a customer survey is a "reasonable means of ascertaining the existence of a causal nexus between increased imports and a firm's lost sales, and the resulting separation of its employees." *Retail Clerks Int'l Union v. Donovan,* 10 CIT 308, 312 (1986) (citing *Local 167, Int'l Molders and Allied Workers' Union v. Marshall,* 643 F.2d 26, 30 (1st Cir. 1981)).

[5] Congress has defined the term "contributed importantly" to mean "a cause which is important but not necessarily more important than any other cause." 19 U.S.C. § 2272(b)(1) (1988).

[6] The court also notes that plaintiffs stated to Labor that the Goldendale closure *caused* fifteen salaried positions to be eliminated at the Yakima sawmill. Record at 51. Clearly plaintiffs were aware of the close connection between the two facilities.

and 1989 are very close (36.2% in 1988 and 36.6% in 1989). *See* Record at 45.[7]

Lastly, plaintiffs reference material which was not before Labor in an attempt to prove that imports of softwood lumber harmed Boise Cascade. The court will not consider this information because it was not before Labor when it rendered its final determination.[8]

### CONCLUSION

After review of the record, the court concludes that the agency determination is supported by substantial evidence in the administrative record. The record reveals that United States imports of softwood lumber decreased absolutely between 1988 and 1989. The customer survey provided Labor with a sufficiently accurate picture of the factors underlying Boise Cascade's lost sales. Significantly, none of the contacted customers identified imports as being a cause behind their decision to cut back on purchases from Boise Cascade and none of the respondents reported an increase in their imports. Plaintiffs' argument that "Without imports, the U.S. softwood mills could better control the market to meet their expenses," Plaintiffs' Brief at 2, while undoubtedly a true statement, serves as an indicator that plaintiffs have misunderstood the nature of the trade adjustment assistance program as implemented by statute. Congress enacted a statute which provides relief *only* when a causal connection between increased import penetration and worker separations can be found. The statute does not address the issue of imports which *are not* increasing and have *not* caused the separations, regardless of how sympathetic the regional employment environment might appear.

Accordingly, plaintiffs' motion for judgment on the agency record is denied.

---

[7] Plaintiffs argue that evidence from the previous investigation indicates that the imports were at a higher level in 1989 than in 1988 . The court finds that plaintiffs' contention is easily dismissed because in the investigation at issue in this case, Labor used data which had been updated as of April 30, 1990, whereas plaintiffs cite to data from the previous investigation compiled in October 1989. *Compare* Record at 25 *with* Record at 45. Plaintiffs ignore the fact that Labor used the newer, updated version of the data in making its determination and therefore, Labor's import figures are the relevant ones in this determination.

[8] The court notes that even if the extra record information had been before Labor, the same conclusion would have been reached. Plaintiffs argue that the Goldendale facility was not closed because of restricted timber sales on federal lands, as Labor had stated in its previous determination. *See* Record at 82. Rather, plaintiffs baldly contend that the reason for the closure was that Boise Cascade was simply unable to bid competitively due to imports of softwood lumber. As proof of this contention, plaintiffs submit a list of "Sawmill Statistics." This list purports to show unsuccessful bids for timber by Boise Cascade in 1989 to supply the Goldendale facility, apparently indicating instances where Boise Cascade was unable to bid competitively against other companies. Even if this list had been before Labor, its only relevance is in proving that Boise Cascade did not win certain bids. From this list, the court cannot ascertain import increases or a causal relationship between imports and the separations. The list merely indicates that Boise Cascade did indeed lose certain bids for timber in 1989, an unfortunate occurrence perhaps, but not one that the court may simply attribute to increased imports.