LACLEDE STEEL CO., PLAINTIFF v. UNITED STATES, DEFENDANT, AND HYUNDAI PIPE CO., LTD., ET AL., DEFENDANT-INTERVENORS

Consolidated Court No. 92-12-00784

(Dated August 11, 1995)

*Schagrin Associates (R. Alan Luberda, John C. Steinberger)* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Cynthia B. Schultz);* Office of the Chief Counsel for Import Administration, United States Department of Commerce *(Lucius B. Lau),* of counsel, for defendant.

*Morrison & Foerster (Donald B. Cameron, Craig A. Lewis, Panagiotis C. Bayz),* for defendant-intervenors.

MEMORANDUM AND OPINION

GOLDBERG, *Judge:* This matter is before the court following remand to the U.S. Department of Commerce, International Trade Administration ("Commerce"). *Laclede Steel Co. v. United States,* 18 CIT 965, Slip Op. 94-160 (Oct. 12, 1994). The reasoning and conclusions of the aforementioned slip opinion are incorporated herein by reference. In remanding this action, the court directed Commerce to review home market sales of overrun production of the subject merchandise (i.e. circular welded non-alloy steel pipe from the Republic of Korea) to determine whether they were made in the ordinary course of trade, taking into account all of the relevant facts and circumstances particular to the sales in question. *Laclede Steel,* Slip Op. 94-160 at 28. The court also directed Commerce to grant adjustments for duty drawback on all U.S. sales, including those compared to constructed value, and to conduct a correlation test to determine whether there is a correlation between price and level of trade for the subject merchandise. *Id.* at 29.

Commerce filed its remand results on March 3, 1995. To correct certain typographical errors in the "Summary" section, Commerce filed amended results on March 9, 1995. Upon remand, Commerce determined that for both Hyundai Pipe Co., Ltd. ("Hyundai") and Pusan Steel Pipe Co., Ltd. ("Pusan") (collectively "respondents"), sales of

overrun pipe were made outside the ordinary course of trade and are thus appropriately excluded for purposes of calculating foreign market value ("FMV"). Second, in accordance with the court's instructions, Commerce granted adjustments for duty drawback on all U.S. sales, including those compared to constructed value. Finally, because the results of the correlation test were inconclusive, Commerce determined that FMV should be calculated without regard to level of trade.

Plaintiff, Laclede Steel Co. ("Laclede"), presently challenges the first aspect of Commerce's remand determination; namely, Commerce's conclusion that sales of overrun pipe in the home market are outside the ordinary course of trade. Laclede raises three main arguments in support of its position. The court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(c) (1988).

## DISCUSSION

In reviewing the results of Commerce's redetermination pursuant to court remand, the court must determine whether any determination, finding, or conclusion is unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986) (citations omitted), *aff'd*, 5 Fed. Cir. (T) 77, 810 F.2d 1137 (1987). The possibility of drawing two inconsistent conclusions from evidence on the record does not prevent an administrative agency's finding from being supported by substantial evidence. *Matsushita Elec. Indus. Co. v. United States*, 3 Fed. Cir. (T) 44, 51, 750 F.2d 927, 933 (1984) (citing *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619–20 (1966)).

Initially, the court notes that no party disputes the latter two aspects of Commerce's remand determination, i.e. the granting of adjustments for duty drawback on all U.S. sales and the results of Commerce's correlation test for levels of trade. The court has reviewed these results, and finds them each to be supported by substantial evidence on the record and in accordance with law. Accordingly, these aspects of Commerce's remand determination are sustained.

With regard to Commerce's analysis of respondents' overrun sales, Laclede argues first that Commerce erred by relying upon information not properly on the record in reaching its remand determination. Specifically, Laclede contends that Commerce's decision to expand the administrative record by soliciting additional information from Hyundai and Pusan was an abuse of discretion, and contravened the plain language of the court's instructions in remanding this matter. The court disagrees.

Commerce was originally afforded sixty days within which to issue its remand determination, i.e. until December 12, 1994. *Laclede Steel*, Slip Op. 94–160 at 30. On November 29, 1994, however, Commerce filed a consent motion requesting an additional forty-five days within which to

file its remand determination. Defendant's consent motion for an extension of time specifically identified as one of the grounds justifying such an extension the fact that Commerce might require more time "to obtain additional verifiable information from the respondents." *Defendant's Consent Motion For Extension of Time to File Remand Results* at 2 (Nov. 29, 1994). The court notes that Laclede expressly consented to this motion, thus acquiescing to possible expansion of the administrative record in this case. *Id.*

The court granted defendant's consent motion by order dated December 8, 1995; in so doing, the court implicitly acknowledged that any decision on the part of Commerce to collect additional information would be in conformance with the court's order of remand. As the court stated in its initial review of this issue, Commerce's "failure to adequately address: the number of home market customers buying alleged overruns; the product standards and uses of alleged overruns; and, the prices and profits on alleged overrun sales, necessitates a remand for reconsideration of these factors." *Laclede Steel,* Slip Op. 94–160 at 8. The court therefore directed Commerce to fully analyze respondents' overrun sales by "taking into account *all* of the relevant facts and circumstances particular to the sales in question." *Id.* at 28 (emphasis added). This language clearly evinces the court's intent that Commerce undertake any effort necessary to conduct a comprehensive analysis of the sales at issue.

Commerce, in its discretion, chooses how best to analyze the many factors involved in a determination of whether sales are made within the ordinary course of trade. Any decision to expand the administrative record upon remand is well within that discretion, absent express language from the court barring such action. Indeed, as prior caselaw makes clear, if nothing in the order of remand precludes the agency from requesting additional information which it deems necessary to comply with the court's instructions, the agency is free to solicit such information. *See, e.g., Win-Tex Prods., Inc. v. United States,* 18 CIT 30, 34, 843 F. Supp. 709, 712 (1994). In this case, nothing in the court's memorandum opinion and order barred Commerce from expanding the administrative record on remand. Accordingly, the court finds that Commerce did not abuse its discretion in soliciting additional information from Hyundai and Pusan. For the foregoing reasons, Commerce's decision to expand the administrative record upon remand is sustained.

Second, Laclede argues that it suffered prejudice due to procedural unfairness during the course of the remand proceedings. Specifically, Laclede alleges that it was "denied the normal opportunity to comment on the information requests and to suggest appropriate areas of inquiry," and that this deprived Laclede of an opportunity to "participate meaningfully in the 'enhancement' of the record." *Plaintiff's Objection To Department of Commerce's Remand Results ("Plaintiff's Brief")* at 5–6. Laclede also argues that its due process rights were violated because Commerce allegedly permitted respondents to "reargue

completely their entire case concerning overruns," instead of "limit[ing] them to responding to the specific questions posed." *Id.* at 6. Upon review, the court finds Laclede's allegations entirely without merit.

As noted, by consenting to defendant's motion for an extension of time, Laclede was put on notice of the possibility that Commerce would seek additional information from respondents. Although Laclede was not afforded an opportunity to comment upon Commerce's information requests prior to their issuance,[1] Laclede did request that Commerce seek a second extension of time from this court so that Commerce could verify the responses provided by the Korean producers. Commerce complied with this request, and the court granted defendant's motion by order dated February 1, 1995. Laclede then submitted specific comments for Commerce to consider in performing its verification. *Confid. Rem. Doc. 10,* at 2. Following verification, Laclede also submitted written comments on Commerce's draft remand results. *Confid. Rem. Doc. 17.* The record thus belies Laclede's claim that it was deprived of meaningful participation in the remand proceedings; to the contrary, it is evident that Laclede was an integral participant. Based upon the foregoing, the court finds that Laclede did not suffer any prejudice due to alleged procedural unfairness on the part of Commerce during remand.

The court also finds that Commerce did not abuse its discretion in accepting the responses of Hyundai and Pusan in their entirety. Commerce's questionnaire dated December 27, 1994 requested Hyundai and Pusan to supply "appropriate documentation and narrative explanations" concerning the end-uses of overrun pipe. *Public Remand Document 1,* at 1 *("Pub. Rem. Doc.").* Similarly, Commerce's January 4, 1995 questionnaire requested a "detailed discussion of the end-uses associated with non-overrun pipe." *Pub. Rem. Doc. 2,* at 1. It is thus apparent that Commerce sought a full discussion of the issues surrounding respondents' overrun sales. Moreover, Commerce allowed all parties an equal opportunity to present fully their legal arguments, in order to ensure that its remand results addressed all relevant facts and circumstances in a comprehensive manner. In particular, Commerce accepted not only Hyundai's and Pusan's exhaustive submission to its questionnaire, but also accepted Laclede's exhaustive seventy-six page response. *See Confid. Rem. Doc. 5.* Based upon the foregoing, the court finds that Commerce's decision to accept the responses of Hyundai and Pusan in their entirety did not violate Laclede's due process rights.

Finally, Laclede argues that Commerce's remand determination concerning respondents' overrun sales is not based upon substantial evidence on the record. The court disagrees. To the contrary, upon reviewing the entirety of the record the court finds that Commerce's remand determination enjoys substantial evidentiary support; indeed,

---

[1] Hyundai and Pusan filed responses on January 11, 1995; January 13, 1995; and January 18, 1995. *See Confidential Remand Document 5,* at 1 *("Confid. Rem. Doc.").* Laclede submitted written comments on January 13, 1995, and January 25, 1995. *Confid. Rem. doc. 5,* at 1–2.

Commerce is to be commended for the thoroughness of its investigation on remand. In support of its determination, Commerce made the following findings:

> (1) Overrun pipe is sold at lower prices than commercial pipe; (2) Overrun pipe is unprofitable compared to commercial pipe; (3) Overrun pipe is purchased by only a small number of customers; (4) Assurances are not provided that overrun pipe meets industry specifications (unlike sales of commercial pipe); (5) Overrun pipe is sold by weight; commercial pipe is sold by grade, specification, and length;[2] (6) The end uses for overrun pipe differ from normal pipe sales. They include such applications as construction of rear carts or push carts for transporting food or construction materials, animal fences, steel pipe doors, and poles and spikes on construction sites, etc. By contrast, the commercial assurances provided by both companies allow commercial pipe end users to use this pipe in plumbing and other higher end-use applications requiring specific product specifications; (7) The average overrun pipe sale is, by quantity, smaller than are sales of commercial pipe; (8) Overrun pipe sales constitute a small percentage of all home market sales; and (9) Overrun pipe is marked differently than commercial pipe to distinguish the two types of pipe.

*Remand Results of Redetermination Pursuant To Court Remand* at 15 (Mar. 3, 1995) *("Remand Results")*. These findings are clearly supported by substantial record evidence. In particular, the record reflects that: the weighted-average profit levels for respondents' sales of overrun pipe were significantly lower than for commercial pipe sales *(Remand Results* at 5); for both Hyundai and Pusan, the number of overrun pipe customers was minuscule in comparison to the number of commercial pipe customers *(Remand Results* at 6); the average sale quantity for overrun pipe sales is much smaller than the average sale quantity for commercial pipe sales *(see Remand Results* at 8); overrun pipe sales constitute only a small percentage of all home market sales *(see Remand Results* at 9); the absence of commercial assurances for end users of overrun pipe concerning product quality limit the end-uses of overrun pipe to low-level applications *(Remand Results* at 13–14); and, although both overrun pipe and commercial pipe are marked with the specification of the pipe, overrun pipe also bears additional markings that distinguish it from commercial pipe *(Remand Results* at 13). In sum, the court is convinced that Commerce has fully analyzed the totality of circumstances surrounding the sales in question, and has rendered a determination supported by substantial evidence on the record.

The crux of Laclede's argument is that Commerce ignored certain evidence in making its remand determination. Laclede contends that this evidence establishes that respondents' sales of overrun pipe were made in the ordinary course of trade. The court, however, is convinced that

---

[2] Commerce noted that respondents' method of selling pipe, i.e. by length for commercial pipe and by weight for overrun pipe, is not, in and of itself, significant; nevertheless, Commerce recognized that it does represent one of several differences in the conduct of trade in overrun pipe versus trade in commercial pipe. *Remand Results* at 7.

Commerce considered all relevant facts and circumstances in rendering its determination. Furthermore, as noted, the possibility of drawing two inconsistent conclusions from evidence on the record does not prevent an administrative agency's finding from being supported by substantial evidence. *Matsushita,* 3 Fed. Cir. (T) at 51, 750 F.2d at 933 (citation omitted). In this case, the court finds that the evidence cited by Laclede does not so detract from the evidence relied upon by Commerce that the remand determination is rendered unsupported by substantial evidence on the record. *Cf. Matsushita,* 3 Fed. Cir. at 54, 750 F.2d at 936 (it is not the court's function to decide that it would have made another decision on the basis of the evidence). For all the foregoing reasons, the court sustains Commerce's determination that respondents' sales of overrun pipe in the home market were made outside the ordinary course of trade.

CONCLUSION

The court has reviewed all three aspects of Commerce's remand determination and finds them each supported by substantial evidence on the record and in accordance with law. Consequently, in conjunction with the court's memorandum opinion and order of remand, see *Laclede Steel Co. v. United States,* 18 CIT 965, Slip Op. 94–160 (Oct. 12, 1994), all issues raised by the parties to this consolidated action have been resolved. The results of Commerce's redetermination pursuant to court remand are sustained in their entirety. Judgment will be entered accordingly.