PUBLIC VERSION

PAUL T. BENNETT, PLAINTIFF *v.* U.S. SECRETARY OF LABOR, DEFENDANT

Court No. 93–02–00080

(Decided June 26, 1996)

*Sidney N. Weiss, Esq.,* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Steven J. Abelson),* of counsel: *Scott Glabman,* Office of the Solicitor, U.S. Department of Labor for defendant.

## OPINION

MUSGRAVE, *Judge:* Plaintiff moves this Court for judgment upon the agency record overturning the negative remand determination of the Department of Labor ("Labor") in this case *(Negative Determination On Reconsideration* (60 Fed. Reg. 19413 (April 18, 1995)). Plaintiff also requests a second remand ordering a further investigation. Plaintiff contends that Labor's negative remand determination denying his petition seeking eligibility for certification of trade adjustment assistance benefits is not supported by substantial evidence and is not in accordance with law. On the basis of plaintiff's motion, Labor's opposition thereto, and plaintiff's reply, the Court finds that Labor's negative remand determination is based on substantial evidence and is otherwise in accordance with law pursuant to the Trade Act of 1974 as amended, 19 U.S.C. § 2272 and 19 U.S.C. § 2395 (1988). The Court entertains jurisdiction to determine this matter under 19 U.S.C. § 2395 (c).

Negative determinations by Labor denying certification for trade adjustment assistance eligibility are upheld by this Court if they are supported by substantial evidence. 19 U.S.C. § 2395(b). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomanta, S.A. v. United States,* 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), *aff'd,* 5 Fed Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted). The Court may remand a trade adjustment assistance case and order Labor to conduct further investigations if "good cause [is] shown." 19 U.S.C. § 2395(b). "'Good cause' exists if [Labor's] chosen methodology is so marred that [the] finding is arbitrary or of such a nature that it could not be based on substantial evidence." *Former Employees of Linden Apparel Corp. v. U.S.,* 13 CIT 467, 469, 715 F. Supp. 378, 381 (1989) (quotations omitted).

## BACKGROUND

Plaintiff is a former toolmaker at Allied Signal's Tempe, Arizona plant. Plaintiff made tools that were incorporated into machines such as lathes, and production workers used those tools to produce finished goods. The Tempe plant produces, *inter alia,* M–1 Abrams tank valve

systems, jet engine starters, and other hardware for use in military and civilian aircraft. Plaintiff alleged in his petition that the transfer of some tooling and tooling operations to Allied Signal's Singapore plant caused his unemployment such that he is entitled to relief under 19 U.S.C. § 2272.

In order for a *production* worker separated from a firm to be certified, 19 U.S.C. § 2272(a)(2) requires that "sales or production, or both, of such firm or subdivision [must] have *decreased absolutely*"; 19 U.S.C. § 2272(a)(3) further requires that "the increases of imports or articles like or directly competitive with articles produced by such workers' firm * * * [must have] *contributed importantly* to such total or partial separation * * * and to such decline in sales or production." (emphasis added) On October 13, 1992, Labor published the notice of its negative determination basing its finding on § 2272(a)(3): Labor determined pursuant to that provision that "increased imports [of like products] did not contribute importantly to worker separations at the firm." *(Determinations Regarding Eligibility To Apply For Worker Adjustment Assistance,* 57 Fed. Reg. 46880 (October 13, 1992)). Plaintiff appealed Labor's negative determination and the Court ordered a remand *(Bennett v. United States Secretary of Labor,* 18 CIT 1063, Slip Op. 94-179, (November 18, 1994)).

The Court identified several reasons for ordering the remand. The Court found that Labor: (1) failed to interview plaintiff's listed witnesses; (2) relied on unsupported, conclusory statements made by Allied Signal's Compensation and Benefits Manager, Mr. Roche, in concluding that production was not transferred from the Arizona to the Singapore plant; (3) performed a flawed survey of Allied Signal's customers in connection with its import substitution investigation; (4) based its determination on imports of military parts even though plaintiff alleged that he worked on civilian applications; and (5) failed to explain how the data it collected demonstrated that production had not decreased or that imports did not cause the unemployment. Accordingly, the remand order declared:

> ORDERED that in its remand the Department of Labor shall investigate allegations made by plaintiff's eye-witness, Mr. Jack Reese, and plaintiff's list of witnesses provided by Mr. Jeffrey Whitehead; and it is further
> ORDERED that in its remand the Department of Labor shall request and verify all supporting documentation and explain the relevance of this information as it relates to its determination; * * *

After conducting the further investigations ordered by the Court, Labor published its *Negative Determination On Reconsideration* at 60 Fed. Reg. 19413 (April 18, 1995).

## DISCUSSION

In connection with its reconsideration, Labor sent letters to plaintiff's witnesses whom it could locate, who comprised most of the witnesses

listed by plaintiff. In response to the letter, plaintiff's eyewitness and former foreman, Mr. Reese, refused to provide sworn testimony to Labor. However, plaintiff's attorney, Mr. Weiss, submitted an affidavit to the Court testifying that statements made by Mr. Reese and attached to his affidavit accurately and truly reflected an interview he conducted with Mr. Reese. During that conversation, Mr. Reese reported to Mr. Weiss that his refusal to supply sworn testimony was based upon a termination agreement with Allied Signal in which he agreed not to disclose certain information. Mr. Reese further reported, [           ] Mr. Reese provided the same information to Labor in a telephonic conversation, and also advised Labor that he was in possession of no extrinsic evidence that would corroborate his assertions. With regard to the other witnesses whom Labor could locate, Labor sent them the initial negative determination along with a request for any information they possessed which would suggest that the initial determination was erroneous. Each witness replied that he possessed no such information. Although plaintiff contends that these latter witnesses would not have been forthcoming with any contradictory evidence due to their reluctance to impugn the assertions by their current superior, Mr. Roche, the form letters made no reference to Mr. Roche and there is no evidence on the record that the alleged intimidation was actual. The Court finds that Labor's efforts adequately discharged its duty to interview plaintiff's witnesses.

In order to rectify its undue reliance on the conclusory statements of Allied Signal's Compensation and Benefits Manager, Mr. Roche, Labor sought more information from Allied Signal to determine the extent of any import substitution. Allied Signal's Manufacturing Manager, Mr. William Scott, responded,

[

]

Conf. Supp. Adm. R. at 6. Allied Signal's Manufacturing Unit Manager, Mr. Jim Nicholson, also advised that he possessed no information that would contradict the initial negative determination. Conf. Supp. Adm. R. at 8. These efforts by Labor to supplement the statements of Mr. Roche were sufficiently responsive to the Court's order and adequately supported the finding that substantial production was not resourced to Singapore.

In its decision ordering a remand, the Court opined that Labor had performed a flawed survey of Allied Signal's customers in connection with its import substitution investigation. The Court reasoned,

Labor ignores the fact that plaintiff claims that the jobs were lost to imports by their company of tooling and forging of parts which were subsequently integrated into larger components which were later sold by Allied Signal to its regular customers. Allied Signal's customers could not have known that they were purchasing foreign

machined (of U.S. cast) parts because the final-assembled product was marked with U.S. country of origin.

*Bennett,* Slip Op. 94–179 at 7. In its brief currently before the Court, Labor explains the propriety of the survey methodology faulted by the Court:

> Apparently, the Court was of the opinion that the surveyed customers continued to buy products from the Tempe plant during the period of investigation, and that, therefore, the stamp on Tempe products indicating that they were made in the United States prevented the customers from knowing that the end product contained imported parts. However, the survey was a survey of Tempe's unsuccessful bids for contracts with its regular customers. After award of the contracts to other bidders, the surveyed companies stopped purchasing the equipment in question. Consequently, Labor's survey investigated whether these past customers substituted imported products for the equipment they used to buy from Tempe.

Therefore, Labor apparently did not alter its survey methodology. In its reconsideration on remand, Labor determined, "The survey showed no foreign impact since the successful awardees were all domestic firms." 60 Fed. Reg. at 19413. The Court accepts Labor's explanation for its methodology and finds that substantial evidence on the record supports Labor's determination that import substitution evidence was not veiled by imported machinery that contained components lacking country of origin markings.

Labor requested and received a financial breakdown from Allied Signal that demonstrated a [   ] in Tempe's commercial sales between 1991 and 1992. Conf. Supp. Adm. R. at 14. The *Negative Determination on Remand* also declared:

> The Department's denial was based on the fact that the increased import criterion and the "contributed importantly" test of [19 U.S.C. § 2272] were not met. U.S. imports of parts for military aircraft decreased in the latest 12-month period May through April 1991–1992 compared with the same period in 1990–1991. The Department obtained a breakout of Tempe's sales for 1990, 1991, and 1992 together with Tempe's purchases from Singapore. All of Singapore's sales went to Tempe. Tempe's purchases from Singapore declined in 1991 and 1992 compared to the year immediately prior. Although production was resourced to Singapore, the major share came from Allied Signal's outside domestic subcontractors and as such did not have any adverse effect on Allied Signal's Tempe facility. Further, Tempe's purchases from Singapore were insignificant when compared to total Tempe's sales and would not form a basis for a worker group certification. Tempes Singapore purchases accounted for only 1.4% of Tempe's sales in both 1990 and 1991 and declined to 1.2% of Tempe's sales in 1992. Tempe's sales in 1992 were relatively constant declining only about 1.2% compared to 1991. Some major categories of sales actually increased in 1992

compared with 1991 * * *. The findings show that worker separations occurred because of corporate reorganizing and redesigning. 60 Fed. Reg. at 19413.

Plaintiff was a support service worker to Allied Signal's production and therefore was not a production worker himself. Citing *Abbott v. Donovan*, 6 CIT 92, 570 F. Supp. 41 (1983), Labor argues that service workers such as plaintiff are eligible for certification when (1) their separation is caused by a reduced demand for their services from a production department whose workers independently meet the statutory criteria for certification, and (2) the reduction directly relates to the import-impacted article. Labor points to the overall decrease in military imports to establish that the requirement of increased imports under 19 U.S.C. § 2272(a)(3) could not have been met. Furthermore, even if relevant commercial imports had increased, the [       ] in Allied Signal's commercial sales would have failed the requirement of decreased sales under 19 U.S.C. § 2272(a)(2). These two factors demonstrate that no independent certification of production workers could have obtained. In addition, the small amount of production diverted to Singapore and the shift in reliance from in-house tool workers to domestic subcontractors reinforce the fact that imports did not contribute importantly to plaintiff's separation.

The Court holds that Labor permissibly and reasonably interpreted the statute in formulating the test for certifying support service workers in the fashion sanctioned previously by *Abbott*, 6 CIT 92, 570 F. Supp. 41. The evidence failed to demonstrate threshold certification eligibility under both the "decreased sales" prong of 19 U.S.C. § 2272(a)(2) and the "contributed importantly" prong of 19 U.S.C. § 2272(a)(3). Labor adequately rectified the shortcomings identified by the Court in its decision ordering a remand and the evidence Labor gleaned during the new investigation produced substantial evidence that plaintiff is not entitled to be certified as eligible for trade adjustment assistance.

## CONCLUSION

Labor's *Negative Determination On Reconsideration* in this case is supported by substantial evidence on the record and is otherwise in accordance with law pursuant to 19 U.S.C. § 2395(b). Labor's remand determination rectified the problems inherent in its initial negative determination which contained both procedural and substantive deficiencies. Therefore, plaintiff has failed to demonstrate good cause for a second remand ordering a further investigation.