HYUNDAI ELECTRONICS INDUSTRIES CO., LTD., HYUNDAI ELECTRONICS AMERICA, INC., LG SEMICON CO., LTD., AND LG SEMICON AMERICA, INC., PLAINTIFFS *v.* UNITED STATES, DEFENDANT *v.* MICRON TECHNOLOGY, INC., DEFENDANT-INTERVENOR

Consolidated Court No. 93–06–00319

(Dated May 2, 1997)

*Graham & James (Lawrence R. Walders, Andrea Fekkes Dynes),* for plaintiffs Hyundai Electronics Industries Co., Ltd. and Hyundai Electronics America, Inc.

*Kaye, Scholer, Fierman, Hays & Handler (Michael P. House, Raymond Paretzky, Stephen Lebowitz),* for plaintiffs LG Semicon Co., Ltd. and LG Semicon America, Inc.

*Lyn M. Schlitt,* General Counsel; *James A. Toupin,* Deputy General Counsel, United States International Trade Commission *(Robin L. Turner),* for defendant.

*Hale and Dorr (Gilbert B. Kaplan, Paul W. Jameson, Cris R. Revas, John M. Ryan, Bonnie B. Byers),* for defendant-intervenor.

## OPINION

GOLDBERG, *Judge:* This matter is before the Court after the United States International Trade Commission ("Commission") issued its affirmative determination of injury on October 3, 1996 (*"Redetermination"*). The Commission issued its *Redetermination* pursuant to this Court's remand in *Hyundai Electronics Industries Co., Ltd., et al. v. United States,* 20 CIT 805, Slip Op. 96–105 (July 5, 1996) (*"Hyundai I"*). In *Hyundai I,* the Court remanded the Commission's initial affirmative determination of injury for reconsideration in light of the United States Department of Commerce's ("Commerce") revised final determination that Samsung Electronics' dumping margin was *de minimus* and, therefore, its imports were to be excluded from the scope of the antidumping order.

In response to the Court's remand in *Hyundai I,* the Commission reopened the administrative record in order to obtain data that isolated only those imports of dynamic random access memory semiconductors of one megabit and above ("DRAM") that were produced by the South Korean producers which remain subject to the antidumping order ("subject imports"). The period of investigation covered January 1, 1989 through September 30, 1992.

Based on the new data, a majority of three Commissioners, comprised of Vice Chairman Bragg and Commissioners Newquist and Nuzum, determined that the subject imports caused material injury to United States domestic industry. Vice Chairman Bragg, who was not a member of the Commission at the time of the original determination, considered the record *de novo.* In addition, Commissioners Newquist and Nuzum determined that the subject imports threatened to cause material injury to the domestic industry. Commissioner Watson made a negative determination of both injury and threat of injury.

Plaintiffs challenge the Commission's injury determination. Plaintiffs contend that the Commission did not comply with *Hyundai I* because, in its *Redetermination*, it failed to adequately revise staff reports. By not adequately revising the staff reports, plaintiffs maintain that the Commission was forced to rely on data that reflected imports from Samsung Electronics. Plaintiffs also challenge the Commission's injury determination on the grounds that it erred when it concluded that the prices of subject imports caused price depression.

The Court affirms the *Redetermination* with respect to the Commission majority's determination of injury. The Court does not reach Commissioners Nuzum's and Newquist's findings of threat of injury. The Court exercises jurisdiction under 28 U.S.C. § 1581(c) (1988).

## STANDARD OF REVIEW

When reviewing an agency's factual findings, the Court must uphold the agency if its findings are supported by substantial evidence. 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986) (citations omitted), *aff'd*, 5 Fed. Cir. (T) 77, 810 F.2d 1137 (1987). In applying this standard, the Court affirms agency factual determinations that are reasonable and supported by the record when considered as a whole, even though there may be evidence that detracts from the agency's conclusions. *Atlantic Sugar, Ltd. v. United States*, 2 Fed. Cir. (T) 130, 138, 744 F.2d 1556, 1563 (1984).

## DISCUSSION

The Court will proceed as follows. First, the Court will review the Commission's injury determination in its *Redetermination*. Based upon the record, the Court determines that the Commission complied with the remand instructions contained in *Hyundai I* and that the injury determination is supported by substantial evidence.

Following this discussion, the Court addresses the challenges that plaintiffs raise to the injury determination. Finding that each challenge lacks merit, the Court affirms the *Redetermination* with respect to the injury determination.

### I. *Injury Determination:*

The Court finds that substantial evidence supports the Commission's determination that the subject imports caused material injury to the domestic industry. In making its determination, the Commission considered the volume of subject imports from South Korea, their effect on prices for the like product, and their impact on domestic producers' U.S. production operations. The data utilized for this analysis excluded figures for Samsung Electronics in accordance with *Hyundai I*.

The Commission's determination that subject imports caused material injury is supported by the following evidence. First, the volume of subject imports, which was near zero before the period of investigation,

began to increase dramatically in 1991 and 1992. *Redetermination* at 6 n.28. Subject imports captured a substantial share of the U.S. market by quantity and value towards the latter part of the period of investigation. *Id.* at 6 n.30. Subject imports also increased relative to domestic production. By 1992, the subject imports increased to a level equivalent to almost three-quarters of interim 1992 domestic production. *Id.* at 7.

At the same time that South Korean producers of subject imports increased their market share, domestic producers lost market share as measured by value during 1991 and 1992. *Id.* at 6 n.30.

Second, the Commission demonstrated that subject imports were priced lower than domestic industry like product. The Commission supported this conclusion based on 75 instances of underselling in 109 comparisons covering three types of domestic DRAM markets. *Id.* at 10. The Commission also found that the DRAM market is price sensitive and that domestic like product and subject imports are market substitutes. *Id.* at 10 n.42. Based on this evidence, the Commission determined that the lower priced subject imports put downward pressure on domestic prices.

Finally, the Commission assessed the subject imports' impact on domestic industry. It found that reported industry operating income, which was $515 million in 1989, declined substantially in the subsequent three years. During the years 1990 through 1992, the domestic industry suffered operating losses. *Id.* at 12. In turn, this caused the domestic industry to reduce its funding for research and development, potentially retarding the long-term competitiveness of domestic producers. *Id.* at 13.

In short, the Commission describes an industry in which new foreign entrants captured a substantial portion of market share from domestic producers. The new entrants' products were close substitutes for the domestic like product. Accordingly, the new competitors relied on a strategy of pricing their products below that of domestic producers. The Commission concluded that this pricing strategy contributed to lower prices in the domestic market. In turn, lower prices and reduced market share resulted in losses in operating income for domestic producers.

The Commission's explanation for what occurred in the domestic DRAM industry is a reasonable interpretation of the facts. Furthermore, the Commission's explanation is supported by data collected from the market and from the producers of subject imports. Therefore, the Court finds that the Commission's determination of material injury is supported by substantial evidence.

II. *Plaintiffs' Challenges to the Injury Determination:*

Plaintiffs make three challenges to the Commission's material injury determination which the Court now addresses.

A. *Commission's Revision of Staff Reports:*

Plaintiffs challenge the Commission's injury determination on the grounds that the Commission failed to revise the staff reports that it uti-

lized to carry out this Court's remand instructions in *Hyundai I*. In particular, plaintiffs argue that the Commission's *Redetermination* is flawed because the Commission relied on industry questionnaires and certain data that allegedly still included figures for Samsung Electronics' imports. Plaintiffs contend that a remand is necessary in order to require the Commission to revise the staff reports to ensure that the data reflects only imports from the South Korean producers that remain subject to Commerce's antidumping order. The Court rejects this argument.

The record shows that the Commission complied with the Court's instruction in *Hyundai I* to reconsider its injury determination in light of Commerce's exclusion of Samsung Electronics from the antidumping order. Pursuant to *Hyundai I*, the Commission reopened the administrative record to collect additional data that isolated figures for the producers that remain subject to the antidumping order. As part of this effort, the Commission contacted those importers who had responded to questionnaires during the investigation in a manner that failed to rule out imports from Samsung Electronics. These importers either listed Samsung Electronics and at least one other South Korean producer as the supplier of their DRAMs, or they failed to identify a particular foreign producer as their source of DRAMs. Furthermore, the Commission directed its staff to produce a revised staff report, dated September 16, 1996. The report presents separate data for the producers that remain subject to Commerce's antidumping order. Finally, the Commission utilized this new data to support the key points of its injury determination in the *Redetermination*.

Based on the Commission's reopening of the administrative record to collect updated data and its consideration of this data in its analysis in the *Redetermination*, the Court is satisfied that the Commission reconsidered its injury determination in light of Samsung Electronics' exclusion from the antidumping order. Furthermore, the Court notes that the Commission is not required to present or consider data in any particular format absent some showing of improper administrative procedure. *Roquette Freres v. United States*, 7 CIT 88, 97, 583 F. Supp. 599, 607 (1984) (data had been presented in the form of questionnaire responses instead of tabular form). In light of the Commission's discretion to consider data in a format of its choice, and this Court's finding that the Commission properly reconsidered its injury determination with the aid of data that excluded Samsung Electronics' imports, the Court rejects plaintiffs' request for remand to make further revisions in Commission reports.

### B. *Commission's Use of Importers' Questionnaires to Calculate Volume of Imports*:

Plaintiffs cite only one instance in which the Commission drew on data that may have contained figures for Samsung Electronics' imports. This instance relates to the Commission's findings that subject imports captured substantial market share when the volume of imports were

measured by apparent consumption. *Redetermination* at 7–8 n.33. The alleged problem with the finding stems from the source of the data, the importers' questionnaires. Plaintiffs contend that these questionnaires are inaccurate for the 1991 and 1992 portion of the period of investigation and that the Commission should use official import statistics instead. The Court rejects plaintiffs' argument that the use of this data undermined the Commission's injury determination.

First, the Court notes that the Commission supported its finding that subject imports captured increased volume based on three separate comparisons: by quantity and value in absolute terms, relative to production, and relative to consumption. *Redetermination* at 6–7. Any one of these calculations is sufficient to support a finding of injury under the statute. 19 U.S.C. § 1677(7)(C)(i) (1988). Because the other two calculations are sound, even if the calculation for apparent consumption is invalid, the injury determination is nevertheless supported by substantial evidence.

Second, the Commission made efforts to cure any deficiency that may have existed in the underlying source of data, the importer questionnaires. As noted above, the Commission contacted those importers who had provided ambiguous responses to questionnaires during the investigation. Thus, the Commission made appropriate efforts to correct its data.

Third, the Commission has demonstrated that, in analyzing the data and weighing its probative value, it considered any deficiencies that may have persisted in the data. *See*, *Redetermination* at 7–8 n.33 (reaffirming its assessment that the data for apparent consumption is only somewhat understated and that the data is reliable). Thus, the Commission responsibly considered the data.

The Court notes that the Commission, as the trier of fact, has considerable discretion in weighing the probative value and relevance of evidence. *Iwatsu Elec. Co. v. United States*, 15 CIT 44, 56, 758 F. Supp. 1506, 1517 (1991). In light of this discretion, the Court is satisfied that the Commission responsibly weighed the probative value of the data and based its injury determination on data that excludes the effects of products sold by Samsung Electronics. The Court holds that the Commission complied with *Hyundai I*.

## C. *Subject Imports as Cause of Price Depression:*

Plaintiffs also argue that the Commission erred in its injury determination when it concluded that the prices of subject imports caused price depression. More specifically, plaintiffs contend that the margin of underselling was insignificant and that price reductions in the DRAM domestic market were caused by technological innovations and greater experience. As evidence, plaintiffs show that prices were declining before they entered the domestic market, and declined less rapidly subsequently. Plaintiffs further point out that the Commission recognized that the maturing of the product cycle was also an important factor

causing price reduction. *Redetermination* at 8. The Court rejects plaintiffs' argument.

First, the Court notes that Congress directed the Commission not to weigh causes of price suppression and depression in antidumping cases, but instead to affirmatively find injury, or threat of injury, when it determines that dumped imports even minimally contribute to industry conditions. *British Steel Corp. v. United States*, 8 CIT 86, 96, 593 F. Supp. 405, 413 (1984); *see also* H.R. Rep. No. 317, 96th Cong., 1st Sess. 47 (1979). Under this standard, if the Commission can demonstrate that dumped imports have contributed to lower domestic prices, then the Commission can properly find material injury, regardless of other factors that also may have contributed to lower domestic prices.

In the present case, the Commission concluded that subject imports contributed to price depression in the market. It did not conclude that this was the sole or even the main cause of reductions in price in the domestic DRAM market. *Redetermination* at 8–9. Because the Commission has supported its conclusion that lower-priced subject imports contributed to price depression in the domestic DRAM market, the Court cannot remand this case to require the Commission to weigh the causes of price depression. Accordingly, the Court rejects plaintiffs' argument.

Second, under the statutory law controlling this case, the Commission has the discretion to consider the dumping margin in its analysis, but it is not required to do so.[1] *See*, 19 U.S.C. § 1677(7)(C) (1988); *Holmes Products Corp. v. United States*, 16 CIT 1101, 1105 (1992). Thus, the Commission does not need to address the margin of underselling to rely on the fact of underselling.

In the present case, because Commerce found that the subject imports are sold at less than fair value, regardless of the magnitude of underselling, the Commission may reasonably rely on this fact to support its conclusion that the subject imports put downward pressure on domestic DRAM prices. The Court, therefore, upholds the Commission's analysis of this issue.

CONCLUSION

The Court finds that the majority's injury determination is supported by substantial evidence and is otherwise in accordance with the law. Judgment will be entered accordingly.

---

[1] Under the Uruguay Round Agreements Act, Pub. L. No. 103–465, § 222(b)(1)(B), 1994 U.S.C.C.A.N. (108 Stat.) 4809, 4870 (codified at 19 U.S.C.A. § 1677(7)(C)(iii)(V) (West Supp. 1997)), the Commission must consider the antidumping margin in examining the impact of subject imports on domestic industry. The law applicable to this case preceded the Uruguay Round Agreement Act. See Uruguay Round Agreements Act, § 291, 1994 U.S.C.C.A.N. (108 Stat.) at 4931.