USINOR SACILOR, Unimétal, and Ascométal, Plaintiffs,

v.

UNITED STATES, Defendant,

and

Inland Steel Bar Company, Defendant–Intervenor.

Slip Op. 97–70.
Court No. 93–04–00230.

United States Court of International Trade.

May 30, 1997.

Weil, Gotshal & Manges, Washington, DC (M. Jean Anderson and Gregory Husisian), for Usinor Sacilor, Unimétal, and Ascométal, plaintiffs.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Reginald T. Blades, Jr.); Office of Chief Counsel for Import Administration, United States Department of Commerce (Terrence J. McCartin, Washington, DC), of counsel, for defendant.

Wiley, Rein & Fielding (Charles Owen Verrill, Jr., Alan H. Price, and Peter S. Jordan, Washington, DC), for Inland Steel Bar Company, defendant-intervenor.

### MEMORANDUM AND OPINION

GOLDBERG, Judge:

This matter is before the Court after the United States Department of Commerce, International Trade Administration, ("Com-

merce") issued its final results of redetermination on March 25, 1997 ("*Second Redetermination*"). The *Second Redetermination* is the third time that Commerce has issued final results in this matter, and today's decision is the third time that the Court has remanded Commerce's results. Commerce issued the *Second Redetermination* pursuant to this Court's most recent remand decision, *Usinor Sacilor v. United States,* —— CIT ——, 955 F.Supp. 1481 (1997) ("*Usinor Sacilor II* "). In *Usinor Sacilor II,* the Court remanded the case to Commerce, directing it to determine the amount of the monetary transfers made by Usinor Sacilor to its non-French subsidiaries, and to incorporate this amount into its countervailing duty calculation. —— CIT at ——, 955 F.Supp. at 1488.

Today, the Court remands Commerce's *Second Redetermination* because Commerce refused to adjust the countervailing duty to reflect these transfers. Instead, Commerce erroneously concluded that evidence of the French government's intent, when it provided subsidies, and its control over Usinor Sacilor outweighs the evidence of the transfers. The Court holds that Commerce's weighing analysis is not supported by substantial evidence. Because Commerce failed to adjust the countervailing duty to reflect the transfers, the Court remands the case to Commerce to adjust the countervailing duty. As part of today's remand, the Court also clarifies prior remand instructions to aid Commerce when it reevaluates the evidence.

Additional background facts underlying this case can be found in this Court's first remand decision, *Usinor Sacilor v. United States,* 19 CIT ——, 893 F.Supp. 1112 (1995) ("*Usinor Sacilor I* "). The Court exercises jurisdiction under 28 U.S.C. § 1581(c) (1988).

## STANDARD OF REVIEW

█ When reviewing an agency's factual findings, the Court must uphold the agency if its findings are supported by substantial evidence. 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986) (citations omitted), *aff'd,* 5 Fed. Cir. (T) 77, 810 F.2d 1137 (1987). In applying this standard, the Court affirms agency factual determinations that are reasonable and supported by the record when considered as a whole, even though there may be evidence that detracts from the agency's conclusions. *Atlantic Sugar, Ltd. v. United States,* 2 Fed. Cir. (T) 130, 138, 744 F.2d 1556, 1563 (1984).

## DISCUSSION

In its *Second Redetermination,* Commerce reviewed evidence establishing that the parent company, Usinor Sacilor, transferred funds to its non-French production operations during a period when it received countervailable subsidies from the French government. *Second Redetermination* at 9–12.

█ Although Commerce recognized that Usinor Sacilor made large transfers of funds to non-French production operations, Commerce refused to adjust the countervailing duty to reflect these transfers. Instead, it assigned "marginal weight" to the transfers. *Id.* at 13. Commerce then concluded that evidence of the transfers was outweighed by other non-economic evidence suggesting that the French government's subsidies benefitted only French production operations. *Id.* at 13–14. This non-economic evidence consists of the French government's intent in granting subsidies and its control over Usinor Sacilor.[1] Commerce concluded that the intent and control evidence is a better indicator of the likely effects of subsidies than evidence of transfers. *Second Redetermination* at 14. Commerce also argued that there is insufficient evidence to show that Usinor Sacilor actually used subsidies to fund non-French operations. *Id.*

---

1. The intent and control evidence to which Commerce refers in the *Second Redetermination* presumably consists of statements by French government officials in public and in cabinet meetings, protocols between the French government and Usinor Sacilor, and a study analyzing the restructuring of the French steel industry. *See Usinor Sacilor I,* 19 CIT at ——, 893 F.Supp. at 1140 (describing the intent evidence Commerce has presented to this Court).

The Court rejects Commerce's weighing analysis as a way to evade this Court's instructions in *Usinor Sacilor II* to adjust the countervailing duty to reflect all relevant evidence in the administrative record.

Assuming, for purposes of the instant review, that the evidence in the administrative record uniformly supports Commerce's conclusion with regard to the French government's intent and control, the Court nevertheless holds that the countervailing duty must be adjusted to reflect the transfers. The Court also rejects Commerce's conclusion that there is no evidence showing that Usinor Sacilor would likely use subsidies to fund non-French operations. *Second Redetermination* at 14.

Usinor Sacilor's transfers to non-French production operations are persuasive evidence in the administrative record regarding the firm's likely uses of subsidies. *Id.* at 9–12 (describing evidence of transfers contained in the administrative record). These transfers total hundreds of millions of dollars. *Id.* They constitute a definable percentage of the subsidies received by Usinor Sacilor from the French government. *Id.* Significantly, they represent the only hard financial evidence presented to this Court as to how subsidies may have been used. The Court finds that the transfers demonstrate that a portion of the subsidies were likely used to benefit Usinor Sacilor's non-French production.

When Commerce refused to adjust the countervailing duty to reflect these transfers, it calculated the countervailing duty as if no such transfers were made. Commerce erred in this decision.

Although Commerce showed that Usinor Sacilor's annual transfers to its non-French production subsidiaries amounted to a small percentage of the total amount of subsidies received by Usinor Sacilor each year, *id.* at 15–18, it did not find that these transfers are *de minimis*. Thus, even if these transfers only marginally affect the countervailing duty, as Commerce contends, they nevertheless have some effect. The present countervailing duty, therefore, fails to reflect all significant evidence contained in the administrative record. To this extent, the counter-vailing duty is inaccurate and unsupported by substantial evidence.

For the foregoing reasons, the Court remands this matter to Commerce to amend the countervailing duty to reflect the evidence of the transfers from the parent company to non-French production operations.

The Court also takes this opportunity to clarify two aspects of its earlier remand in *Usinor Sacilor II*. First, in its *Second Redetermination,* Commerce incorrectly interpreted this Court's instructions in *Usinor Sacilor II* to mean that it must only consider evidence contained in the plaintiffs' supplementary briefs. *See Second Redetermination* at 9. The Court did not limit the scope of evidence to be considered by Commerce on remand. Rather, the Court instructed Commerce to consider all relevant economic evidence pertaining to the likely uses of subsidies. *Usinor Sacilor II,* —— CIT at ——, 955 F.Supp. at 1488. Therefore, Commerce should consider all relevant evidence in the administrative record when conducting its redetermination regarding adjustments to the countervailing duty.

Second, in *Usinor Sacilor II,* the Court did not direct Commerce to "trace" the subsidies to their actual end-use in the non-French subsidiaries. Rather, the Court instructed Commerce to examine the transfers that Usinor Sacilor made to its non-French subsidiaries. The Court determined that this evidence is germane because it indicates the extent to which subsidies were likely used for non-French production operations. *Usinor Sacilor II,* —— CIT at ——, 955 F.Supp. at 1489. Because no further tracking of the funds has been ordered by this Court, the remand instruction to examine transfers from the parent to the subsidiary does not constitute a requirement that Commerce "trace" subsidies to their actual end-use in the subsidiary. *Id.*

## CONCLUSION

Upon consideration of all of the parties' arguments and submissions, the Court remands Commerce's *Second Redetermination* with instructions to analyze all direct economic evidence on the likely effects of subsi-

dies and to adjust the countervailing duty in light of this evidence. The Court's order will be entered accordingly.

### *ORDER*

This action having been submitted for decision; and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that the *Final Results of Redetermination Pursuant to Court Remand* (March 25, 1995) ("*Second Redetermination*") of the U.S. Department of Commerce, International Trade Administration, is remanded for reconsideration in accordance with the Court's *Memorandum and Opinion* concerning the sales denominator used in computing Usinor Sacilor's net subsidy; it is further

**ORDERED** that Commerce's remand results are due to be filed within sixty (60) days from the date of this **ORDER**. Any comments or responses by the parties to the remand results are due on or before thirty (30) days thereafter, and shall be limited to twenty (20) pages. Any rebuttal comments are due twenty (20) days thereafter, and shall be limited to twenty (20) pages.