NEW ZEALAND LAMB CO. INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court Nos. 91–04–00297 and 91–04–00297–S

(Decided April 22, 1997)

*Wigman, Cohen, Leitner & Myers, P.C. (Edward J. Farrell)* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, *(James A. Curley)* for defendant.

## OPINION

MUSGRAVE, *Judge:* Plaintiff brings this action to contest the interest assessment that defendant, the United States Customs Service ("Cus-

toms"), imposed on the subject merchandise after liquidation. Customs initially accepted a countervailing duty deposit rate of NZ.36 cents per pound when the subject merchandise was entered. Customs subsequently affixed a countervailing duty rate of NZ$.3602 per pound at the time of liquidation and billed the Plaintiff for the difference. Customs later imposed an interest assessment on the difference between the estimated duty deposited and the liquidated duty amount based on 19 U.S.C. § 1671f(b) (1988). However, the countervailing duty rate remained constant throughout the time period in question. The Court finds that Customs mistakenly applied the incorrect countervailing duty deposit rate at the time of entry. Customs' mistake places this action outside the purview of the countervailing duty statute and thereby bars the imposition of interest on the difference between the deposit amount and the liquidated amount. The Court grants plaintiff's motion for summary judgment and awards the plaintiff the amount of interest paid with interest as well as costs.

## BACKGROUND

The plaintiff, New Zealand Lamb Company, Inc. ("NZL"), imported frozen lamb meat under eight entries made between December 18, 1985 and July 30, 1986. The lamb meat was subject to a countervailing duty order dated September 17, 1985. *Final Affirmative Countervailing Duty Determination and Countervailing Duty Order; Lamb Meat from New Zealand,* 50 Fed. Reg. 37,708 (1985). The countervailing duty order required a cash deposit equal to NZ$0.3602/lb. *Id.* Customs, however, collected a countervailing duty deposit of NZ.36 cents/lb. for each of the eight entries. Six of the entries were subsequently liquidated on December 15, 1989 and the other two entries were liquidated on December 22, 1989. At the time of liquidation, Customs determined that the countervailing duty deposited was less than the duties owed and Customs billed NZL for the difference. On March 23, 1990, Customs billed NZL for interest on the difference between the amount deposited and the liquidated amount. NZL paid the difference in duties but filed Protest 2704-0-00278 on June 21, 1990 disputing the assessment of interest. Customs denied the protest on October 26, 1990. NZL subsequently paid the interest and filed a summons with the Court on April 19, 1991 and the accompanying complaint on May 8, 1991. Customs filed its answer on September 9, 1991.

Customs moved to sever and dismiss on April 16, 1992 and NZL filed its opposition to dismiss and filed a cross-motion for judgment on the pleadings on May 19, 1992. Customs filed a response on June 18, 1992 and NZL filed its reply on July 6, 1992. The Court issued its initial decision on December 8, 1992 granting NZL's motion for judgment on the pleadings with respect to Court No. 91–04–00297–S which was severed. On February 4, 1993 Customs appealed the decision to the Court of Appeals for the Federal Circuit ("CAFC") which vacated and remanded the case on November 14, 1994.

NZL filed a motion for summary judgment on February 29, 1996 and Customs filed a cross-motion for summary judgment on May 20, 1996. NZL filed its opposition on August 13, 1996 and Customs filed its reply on August 16, 1996.

## STANDARD OF REVIEW

The Court "shall hold unlawful any determination, finding, or conclusion found * * * to be unsupported by substantial evidence on the record, or otherwise not in accordance with law, * * *" 19 U.S.C. § 1516a(b)(1)(B) (1994). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (citation omitted). "[Substantial evidence] is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted). "As long as the agency's methodology and procedures are reasonable means of effectuating the statutory purpose, and there is substantial evidence in the record supporting the agency's conclusions, the court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." *Ceramica Regiomantana, S.A. v. United States*, 10 CIT 399, 404–5, 636 F. Supp. 961, 966 (1986), *aff'd* 5 Fed. Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

Both parties have moved for summary judgment. Summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Ct. Int'l Trade R. 56. Although the parties disagree on the factual issue of whether the correct amount of duty was tendered at the time of entry, the Court finds that Customs' initial error precludes the need for the Court to address the factual issue in contention. As there are no material factual issues, the Court has the power to render summary judgment.

## DISCUSSION

The Court will address the two issues that are the subject of this remand. The first issue is whether Customs erred by refusing to accept the correct amount of countervailing duties when offered in deposit.[1] The Court finds that Customs erred in collecting the incorrect amount of countervailing duty at the time the subject merchandise was entered. This finding renders moot the factual issue of whether the correct amount of duty was tendered and whether it was refused. The second issue pertains to whether the Customs' error precludes the assessment of interest based on the difference between the amount of countervailing duty deposited and the amount of countervailing duty required by

---

[1] The CAFC remanded the case based on two issues: (1) "whether Customs erred by refusing to accept the correct full amount of countervailing duties when offered in deposit;" and (2) "whether, if Customs did so err, the result was that New Zealand Lamb was not required to pay interest on the resulting underpayment. Those are the issues which lie at the heart of New Zealand Lamb's protest and which should be decided in the first instance by the trial court." *New Zealand Lamb Co., Inc. v. United States*, 12 Fed. Cir. (T) ___, ___, 40 F.3d 377, 381 (Fed. Cir. 1994).

the countervailing duty order. The Court finds that the Customs error precludes the assessment of interest.

### I. Customs Erred in Failing to Collect the Correct Amount of Countervailing Duty Upon Entry.

Customs has the obligation to collect a cash deposit on goods subject to an outstanding countervailing duty order in the amount equal to the countervailable subsidy. Customs did not fulfill its obligation in the instant case. Under 19 U.S.C. § 1671e(a), Customs is directed to assess countervailing duty on goods found to be within the scope of a countervailing duty order. The statute states:

> Within 7 days after being notified by the Commission of an affirmative determination under section 1671d(b) of this title, the administering authority shall publish a countervailing duty order which—
>
> > (1) directs customs officers to assess a countervailing duty equal to the amount of the net subsidy determined or estimated to exist, * * *

19 U.S.C. § 1671e(a) (1988). In addition, section 1671h states:

> For all entries, or withdrawals from warehouse, for consumption of merchandise subject to a countervailing duty order on or after the date of publication of such order, no customs officer may deliver merchandise of that class or kind to the person by whom or for whose account it was imported unless that person complies with the requirement of subsection (b) of this section and deposits with the appropriate customs officer an estimated countervailing duty in an amount determined by the administering authority.

19 U.S.C. § 1671h (1988). The U.S. Department of Commerce ("Commerce"), the administering authority, published a final countervailing duty order for lamb meat from New Zealand which stated:

> The net bounty or grant for the review period is NZ$0.3602/lb. Therefore, we are directing the U.S. Customs Service to continue to suspend liquidation of all entries of lamb meat from New Zealand which are entered, or withdrawn from warehouse, for consumption, and to require a cash deposit on these products equal to the net bounty or grant.

*Final Affirmative Countervailing Duty Determination and Countervailing Duty Order; Lamb Meat from New Zealand,* 50 Fed. Reg. 37,708 (1985). The effective date of the order was September 17, 1985 and the countervailing duty rate remained at NZ$0.3602/lb. throughout the time period covering all of the entries at issue. The first entry of lamb meat involved in the instant case was dated December 18, 1985 at which time Customs knew that the correct countervailing duty rate was NZ$0.3602/lb.[2] The amount of countervailing duty actually deposited and collected by Customs, however, was only an amount equal to NZ.36

---

[2] In the declaration of the Customs "team leader" Michael Willis, he stated that "at or about the time of entry of the items involved in this case, one or more of my team members reviewed the entry summaries covering said goods, which the team knew to be subject to estimated countervailing duties at the rate of NZ$0.3602/lb., * * *" Def.'s Ex. B at 1.

cents/lb. Customs accounts for the difference as a "mere inadvertence/oversight on the part of Customs" and the Customs team leader stated that "[h]ad my team recognized this at the time of entry, it would have rejected the entries and instructed the importer to resubmit them with the correct amount of estimated countervailing duties." Def.'s Ex. B at 2.

The Court finds that Customs had the onus of recognizing the error in the amount of duty deposited by NZL at the time of entry. Customs had a statutory obligation under § 1671e(a) and § 1671h to assess and collect the established countervailing duty deposit rate upon entry. Customs cannot avail itself of any statute that allows for absolution for their "inadvertence" or "oversight" and, therefore, the Court finds that Customs did not fulfill its mandated obligation nor did Customs prove there was an exception for doing so. Having found that Customs did commit an error in the assessment and collection of countervailing duty to be deposited, the Court now turns to the second question of whether Customs can collect interest based on its error.

## II. CUSTOMS CANNOT CHARGE INTEREST BASED ON A CUSTOMS ERROR AT THE TIME OF ENTRY.

Customs relies on the countervailing duty statute to justify the assessment of interest on the difference between the amount of countervailing duty deposited and the amount that should have been deposited. The Court finds that the countervailing duty statute does not provide Customs a means of avoiding responsibility for collecting the incorrect amount of countervailing duty deposited at the time of entry of the subject goods.

Customs argues that when the amount of countervailing duty deposited is less than the amount assessed at liquidation the importer is liable for the difference together with interest. The statute reads:

> If the amount of an estimated countervailing duty deposited under section 1671e(a)(3) of this title is different from the amount of the countervailing duty determined under a countervailing duty order issued under section 1671e of this title, then the difference for entries of merchandise entered, or withdrawn from warehouse, for consumption after notice of the affirmative determination of the Commission under section 1671d(b) of this title is published shall be—
>
> > (1) collected, to the extent that the deposit under section 1671e(a)(3) of this title is lower than the duty determined under the order, or
> > (2) refunded, to the extent that the deposit under section 1671e(a)(3) of this title is higher than the duty determined under the order,
>
> together with interest as provided by section 1677g of this title.

19 U.S.C. § 1671f(b) (1988). Taken out of context, it would appear that Customs' reliance on the language provides for the imposition of interest on the difference of countervailing duty at issue. With the benefit of

thorough evaluation however, the Court finds that Customs' argument misapplies the statute. The statute contemplates goods entered that are subject to an as yet unknown countervailing duty order. As the legislative history states:

> Under section 707 of the Tariff Act of 1930, as added by the bill, the difference between the security posted under 703(d)(2) on an entry *during an investigation* and the countervailing duty imposed under section 701(a) would be (1) disregarded, if the security is less, or (2) refunded, if the security is more.

H.R. Rep. No. 261, at 59 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 445 (emphasis added). The preliminary deposit amount is the best estimate of the subsidy finding in a preliminary determination by Commerce. Once a final determination is made, Commerce orders the final countervailing duty rate. The difference between the preliminary amount and the final amount is what is contemplated by the statute. This situation was not present in the instant case. The final duty rate was established well before the first entry of the subject merchandise and the same rate applied to all of the subsequent entries in question. The countervailing duty rate remained constant and, therefore, there was no difference between the duty deposit rate and the final or liquidated duty rate. But for the Customs entry error, the duty deposit amount and the final duty amount would have been the same.

Customs also asserts that the "statutory language does not provide for any exceptions to the payment of interest." Customs cannot extend the scope of the statute to include the "inadvertence/oversight on the part of Customs." Def.'s Ex. B at 2. Had the duty rate been in flux as envisioned by the statute, Customs' argument might appertain in this case. The statute does not apply because there was no change contemplated or realized in the countervailing duty rate throughout the time period of the subject entries. Therefore, Customs' argument is misplaced and inappropriate for the conditions that exist here.

Had Customs fulfilled its obligation to assess the correct duty deposit amount, interest upon non-payment would have accrued from the time of entry. That is not what occurred in the instant case. NZL cannot be penalized for a charge assessed retroactively. As the CAFC held in this action,

> We do not see how there can be a decision on a charge—at least for purposes for starting the running of a limitations period—until the party levying the charge announces that the charge is being levied and states the amount of the charge, or the method of computing the charge. In the case of interest that means there is no decision until the party being assessed either is informed of the amount of interest that is due or is told what the rate of interest to be applied against the principal amount is.

*New Zealand Lamb Co., Inc. v. United States*, 12 Fed. Cir. (T) ____, ____, 40 F.3d 377, 382 (Fed. Cir. 1994). The logic is applicable to the issue before this Court. The Court sees no soundness in Customs' assessment of

interest on a charge that was not imposed. Without the benefit of a variable countervailing duty rate, Customs cannot avail itself of any statute that will allow the imposition of interest on a retroactively assessed charge. The Court holds that Customs cannot assess interest on the difference between the deposited countervailing duty amount and the liquidated amount based on a Customs error.

NZL requested the Court to revisit the issue of the timeliness of Customs' assessment of interest incident to liquidation. The Court does not have to reach that issue in the disposition of this action. The finding that Customs erred and cannot assess interest precludes the Court's deliberation of the subsequent events in this case.

## CONCLUSION

The Court finds that Customs erred upon failing to assess and collect the proper countervailing duty deposit when the subject merchandise was entered; therefore Customs cannot assess interest on the difference between the deposited amount of duty and the liquidated amount of duty, based on a Customs error. The Court must, and does find that Customs' determination in this case was not in accordance with law. Therefore, the Court grants the plaintiff's motion for summary judgment and awards plaintiff the amount of interest paid with interest.