AL TECH SPECIALITY STEEL CORP., CARPENTER TECHNOLOGY CORP., REPUBLIC ENGINEERED STEELS, SLATER STEELS CORP., AND TALLEY METALS TECHNOLOGY PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND ISIBARS LTD., DEFENDANT-INTERVENOR

Court No. 97–08–01328

(Dated September 24, 1998)

*Collier, Shannon, Rill & Scott (Laurence J. Lasoff, Robin H. Gilbert, and Sarah Lynch)* for plaintiffs.
*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director; *Velta A. Melnbrencis,* Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, *(Michele D. Lynch);* of counsel: *David W. Richardson,* General Attorney, Office of Chief Counsel, Import Administration, U.S. Department of Commerce for defendant.
*Ablondi, Foster, Sobin & Davidow (Peter J. Koenig)* for defendant-intervenor.

## OPINION

MUSGRAVE, *Judge:* Plaintiffs, also petitioners in this review, AL Tech Speciality Steel Corp., Carpenter Technology Corp., Republic Engineered Steels, Slater Steels Corp., and Talley Metals Technology (collectively "AL Tech") move for judgment upon the agency record contesting the administrative review of the antidumping order on stainless steel bar from India. *See Stainless Steel Bar From India: Final Results of Antidumping Duty Administrative Review,* 62 Fed. Reg. 37,030 (1997) *("Final Results").* AL Tech argues that: (1) Commerce's use of the October 27, 1994 purchase order ("purchase order") date as the date of sale for respondent and defendant-intervenor Isibars Limited ("Isibars") is unsupported by substantial evidence on the record; and (2) this issue should be remanded with instructions that Commerce issue a new determination based on the invoice dates of June 3, 1995 and September

26, 1995 ("invoice date") as the dates of sale.[1] AL Tech also contends that the use of the invoice date as the date of sale will raise the dumping margin for Isibars from zero to 16 percent. Petitioners' Case Br. at 15 (March 27, 1997).[2]

## STANDARD OF REVIEW

Section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(b)(1), sets forth the standard of review for this case. 19 U.S.C. § 1516a(b)(1) (1994). Section 1516a(b)(1) states that "[t]he court shall hold unlawful any determination, finding, or conclusion found * * * to be unsupported by substantial evidence on the record, or otherwise not in accordance with law * * *." 19 U.S.C. § 1516a(b)(1) (1994). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), *aff'd*, *Ceramica Regiomontana, S.A. v. United States*, 5 Fed. Cir. (T) 77, 810 F.2d 1137 (1987). In performing its substantial evidence analysis, the Court must:

> consider both sides of the record. It is not sufficient to examine merely the evidence that sustains the agency's conclusion. * * * In other words, it is not enough that the evidence supporting the agency decision is 'substantial' when considered by itself. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.

*Melex USA, Inc. v. United States*, 19 CIT 1130, 1132, 899 F. Supp. 632, 635 (1995) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 478, 488, 71 S.Ct. 456, 459, 464, 95 L.Ed. 456 (1951)).

## BACKGROUND

On March 19, 1996, Commerce initiated an administrative review of Isibars' sales of stainless steel bar in the United States for the period August 4, 1994 to January 31, 1996. Isibars is an Indian based manufacturer/exporter of stainless steel bar. AL Tech entered its appearance in the review on April 15, 1996. On March 7, 1997, Commerce issued the preliminary results of its review determining that Isibars' sales had not been made below normal value. *Stainless Steel Bar From India: Preliminary Results of Antidumping Duty Administrative Review*, 62 Fed. Reg. 10,540 (1997) *("Preliminary Results")*. In response, AL Tech submitted its case brief on March 27, 1997, arguing that the *Preliminary Results* improperly relied upon the purchase order date as the date of sale. Isibars filed its rebuttal brief in support of the *Preliminary Results* on April 3, 1997. On July 10, 1997, Commerce issued the *Final Results* which determined a zero dumping margin for Isibars. AL Tech subse-

---

[1] "Invoice date" refers to either of the two invoice dates.

[2] As set forth in the *Final Results*, if the date of sale is based on either invoice date, Commerce "must use 'facts available' for determining the extent of dumping because the invoice date falls outside the period for the information provided by respondent about the comparison market." *Final Results* at 37,031.

quently filed this action reasserting its claim that Commerce incorrectly relied upon the purchase order date as the date of sale.

## DISCUSSION

In determining whether merchandise subject to an antidumping order "is being, or is likely to be, sold at less than fair value," Commerce compares export price, or constructed export price, and normal value. 19 U.S.C. § 1677b(a) (1994). While the statute also provides that Commerce must compare sales with "reasonably corresponding" sales dates, no further guidance is provided for determining date of sale. 19 U.S.C § 1677b(a)(1)(A) (1994).

In the absence of express statutory guidance, it has been Commerce's practice to determine the date of sale as the date on which the essential terms of sale, specifically price and quantity, are finalized. *See Silicon Metal from Brazil; Final Results of Antidumping Duty Administrative Review,* 61 Fed. Reg. 46,763, 46,766 (1996); *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review,* 56 Fed. Reg. 31,692, 31,709 (1991) ("It is the Department's established practice to use the date when the price and quantity terms are set as the date of sale."); *Titanium Sponge From Japan; Final Results of Antidumping Duty Administrative Review and Tentative Determination To Revoke in Part,* 54 Fed. Reg. 13,403, 13,404 (1989) ("[T]o resolve date of sale issues, [Commerce] is guided primarily by the date when the essential terms of sale, particularly quantity and price, are established * * *."). Commerce practice also establishes that "[i]f *basic terms of sale* have changed up to, or even subsequent to, the date of shipment, then the date of shipment is the date of sale." Import Administration Questionnaire to Isibars, March 29, 1996, Pub. Doc. 4 at I–5 (emphasis added).

Based upon Commerce's date of sale policy, AL Tech contends that Commerce's decision to use the purchase order date as the date of sale was: (1) in contravention of Commerce's established practice; and (2) not based on substantial evidence on the record:

> *First,* Commerce erred in using the purchase order date as the date of sale because, according to Commerce policy, the date of sale is the date at which the material terms of a contract are agreed to by the parties. As is clear from the record, the date when the material terms of the contract between Isibars and its U.S. buyer were agreed upon is the invoice date. * * *

> *Second,* Commerce's * * * interpretation [of the term *delivery allowance*] was unsupported by substantial evidence on the record because neither of the two persons contacted by [Commerce] to describe industry standard practice on delivery allowances was able to provide a definitive answer as to whether the term 'delivery allowance' applies to a shipment as a whole or to each type of bar when a shipment is composed of many types.

Br. in Supp. of Pls.' Mot. for J. on the Agency R. Pursuant to Rule 56.2 at 4–5.

In response, Commerce and Isisbars argue that: (1) the price and quantity terms were set as of the purchase order date; and (2) "the evidence contained in the record shows that the quantity delivered by Isibars fell within the *delivery allowance* of the purchase order, and that changes in the delivery date or number of deliveries did not effectuate a renegotiation of the price and quantity terms." Mem. of the U.S. in Opp'n to the Pls.' Mot. for J. Upon the Agency R. at 2 ("Def.'s Br.") (emphasis added).

The Court agrees that "at the heart of this controversy" is the proper definition of the term "DELIVERY ALLOWANCE: +/–.10%" ("delivery allowance") contained in the purchase order. Petitioners' Reply Br. in Resp. to Def.'s and Def.-Intervenor's Br. in Opp'n to Pls.' Mot. for J. on the Agency R. at 2. The purchase order details size, quantity, and price for two grades of steel bar and sets delivery terms as CIF Seattle. The purchase order also lists: payment terms, terms of shipment, packing, freight, insurance, inspection, country of origin, *delivery allowance*, and weighing and shipping marks. In contrast, the invoices at issue also detail size, quantity, and price for two grades of steel bar. However, the quantity of steel bar listed in the invoices, and actually delivered, differs from the quantity set forth in the purchase order.

If the Court finds that the delivery allowance provision applies to the shipment as a whole, then it appears that the quantity variances between the purchase order and invoices were within the delivery allowance, and therefore, not material alterations to the original agreement.[3] Under this finding, the purchase order date would be the correct date of sale. Alternatively, if the Court finds that delivery allowance applies to each steel bar individually, then the original agreement would have been subsequently modified by quantity variances in excess of the 10 percent delivery allowance.[4] The Court, in the second example, would then conclude that the invoice date is the correct date of sale.

Upon review of the record, the Court finds that the terms of sale in this case were initially established as of the purchase order date. Ordinarily, this determination would then lead to the conclusion that the purchase order date is the correct date of sale. However, based upon the Court's finding that Commerce failed to adequately verify Isibars' statement on industry practice, it is unclear whether the initial terms of sale were either unaffected or subsequently modified by the quantity variances between the purchase order and invoices.

---

[3] A comparison of the *total* quantity of steel bar listed in the purchase order with the *total* quantity of steel bar listed in the invoices reveals a quantity variance of less than 5 percent.

[4] Comparing the steel bar listed in the purchase order to the steel bar listed in the invoices on an *individual basis* reveals quantity variances ranging from 0.49 to 77.91 percent.

Under 19 U.S.C. § 1677m(i) (1994) and 19 C.F.R. § 353.36 (1995), Commerce is required to verify all factual information[5] relied upon in making a final determination in an administrative review.[6] Commerce contends that in conducting its on-site verification of Isibars' questionnaire responses, Commerce "found no evidence of any communication between Isibars and its client discussing a change in terms of sale stemming from the differing quantities [between the purchase order and invoices]." Date of Sale Mem., Pub. Doc. 47, Def. Exh. 11 at 2 (June 26, 1997) ("Date of Sale Memorandum"). And based upon this absence of evidence contradicting Isibars' questionnaire response as to the date of sale, Commerce agreed with Isibars that the purchase order date was the correct date of sale when Commerce issued its *Preliminary Results*.

AL Tech subsequently challenged the *Preliminary Results* arguing that the correct date of sale was the invoice date because the basic terms of sale changed after the purchase order date. In response, Isibars argued that the basic terms of sale did not change because the delivery allowance applied to the order as a whole rather than to each steel bar individually. Isibars also claimed that it was *standard industry practice* to apply the delivery allowance to the entire order rather than to each steel bar individually:

> [T]he reason for the quantity tolerance limits is that it is not always possible for the Indian supplier to supply precise quantities. That depends on the available supply of raw materials at the time of production and the production yields, factors which the parties cannot always control (especially in India). Thus, the customer agrees at the time of the purchase order to a delivery quantity tolerance range. In that respect, the actual shipped quantities are outside the control of the parties, another reason why the agreed on quantities and tolerances thereon in the purchase order set the date of sale * * *.
>
> *In other words, these facts reflect an industry practice in the stainless steel bar industry.*

Resp't Isibars' Rebuttal Br. to the Case Br. of Petitioners at 2–3 (April 3, 1997) (emphasis added). Essential to this Court's finding, is the fact that Commerce subsequently relied upon Isibars' factual statement regarding the alleged standard industry practice when Commerce issued its *Final Results. See* Def.'s Br. at 20 ("Isibars' explanation of the delivery allowance, when coupled with the results of Commerce's verification and the fact that the purchase order was substantially performed, lead to the inexorable conclusion that Commerce's interpretation of delivery is supported by substantial evidence."); Date of Sale Memorandum at 2 ("[W]e have been unable to find any evidence of standard industry prac-

---

[5] Factual information includes "initial and supplemental questionnaire responses" and "statements of fact in support of allegations." 19 C.F.R. § 353.2(g) (1995).

[6] The verification requirement was created in response to numerous complaints regarding the United States Department of the Treasury's verification practices in antidumping and countervailing duty proceedings, especially with regard to information submitted by foreign governments. S. Rep. No. 96–249, at 98 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 484.

tice which would contradict respondent's claim."); and *Final Results* at 37,031 (referencing Commerce's Date of Sale Memorandum).

In an attempt to "inform itself about delivery allowance practices," Commerce contacted several steel industry experts within the government. Def.'s Br. at 26. When these experts were unable to offer any evidence of standard industry practice which either contradicted or supported Isibars' claim, Commerce concluded that, in the absence of contradictory evidence, Isibars' claim must be true. Date of Sale Memorandum at 2. The Court finds this reasoning and determination inconsistent with the statutory requirement that Commerce *verify* factual information relied upon in making a final determination in an administrative review. 19 U.S.C. § 1677m(i) (1994).

After having failed to uncover evidence to corroborate Isibars' statement on the industry standard, Commerce should have then either concluded that the claim was unverifiable or continued the investigative process until corroborating evidence was obtained. The Court finds that an absence of contradictory evidence, in and of itself, does not meet the verification requirements of 19 U.S.C. § 1677m(i) and 19 C.F.R. § 353.36. To meet the requirements of 19 U.S.C. § 1677m(i) and 19 C.F.R. § 353.36, Commerce must establish record evidence which either supports or authenticates the factual statement upon which Commerce relies in making a final determination in an administrative review.[7]

Upon review of the record in this case, the Court, finding no evidence to support Isibars' industry standard claim, holds that Commerce failed to verify the industry standard claim. *See* 19 U.S.C. § 1677m(i) (1994); 19 C.F.R. § 353.36 (1995). The Court also finds that based upon this failure to verify a factual statement upon which it relied, Commerce's date of sale determination is neither in accordance with law nor based upon substantial evidence on the record.

## CONCLUSION

In accordance with the foregoing opinion, Commerce's date of sale determination is remanded with the instruction that Commerce reconsider whether the term delivery allowance, as set forth in the purchase order, applies to the order as a whole or each steel bar individually. Commerce shall also: (1) allow the parties the opportunity to submit additional information on the delivery allowance issue; and (2) verify all factual statements upon which Commerce relies in issuing its remand determination. The *Final Results* are affirmed as to all other issues.

---

[7] Though not defined by statute, Webster's Dictionary defines "verify" as "to confirm or establish the authenticity or existence of by examination, investigation, or competent evidence." Webster's Third New International Dictionary of the English Language Unabridged 2543 (1993).